[Bates v. Crowell.]

# Bates *v.* Crowell.

*Bill in Equity to have Contract Cancelled.*

1. *Equity pleading; when bill to cancel conditional sale contains equity*—Where in a bill filed to have a written contract, which upon its face was a conditional sale of a horse, declared void, and to have the horse which the defendant, upon an alleged breach of the contract, had taken in his possession, delivered to complainant, it is averred that there was no sale of the horse, but the writing evidencing the transaction was intended to be a mortgage to secure the money loaned complainant by defendant to purchase the horse, that the transaction was usurious, and that complainant had paid the money borrowed with legal interest, such bill contains equity.

2. *Same; conditional sale; insufficiency of plea of res adjudicata.* To such a bill a plea by defendant in which he sets up as *res adjudicata* of the matters complained of in complainant's bill, that the present defendant recovered the horse in question from the present complainant in an action of detinue, and that such recovery was upon the strength of his title under the contract now sought to be annulled, does not constitute a defense to the suit, and the judgment in said action of detinue is not *res adjudicata;* the facts averred in complainant's bill as the ground for the relief prayed for not having been admissible as a defense to the action of detinue, and the present complainant not having had the benefit thereof in such action.

APPEAL from the City Court of Birmingham, in Equity.

Heard before the Hon. W. W. WILKERSON.

The bill in this case was filed by the appellee, Allen Crowell, against the appellant, George B. Bates; and its averments are substantially as follows: That complainant, desiring to purchase a horse belonging to the Heidt-Nelson Coal & Lumber Company, and it having agreed to sell him to complainant for the sum of $50, which was a reasonable value, and complainant being very indigent and with-

out means to obtain the money for that purpose, applied to the defendant Bates, and informed him of the above facts, and asked him for a loan of the money to buy said horse; that said Bates in reply to said request and for the purpose of evading the statutes against usury stated to complainant that he, Bates, would buy the horse for said sum of fifty dollars and sell him to complainant for one hundred and twenty dollars; that complainant being unable to raise the money otherwise, agreed to and accepted said proposition; that, said Bates, thereupon purchased said horse from the said Heidt-Nelson Coal & Lumber Co. at and for the sum of fifty dollars, and complainant pursuant to his agreement with Bates, executed and delivered to Bates a contract, (a copy of which is attached to the bill as exhibit "A"), and received the horse from Bates.

The bill further avers, that at the time of making said original agreement, said Bates was well aware of the indigent condition of complainant, and knew that said horse was not worth more than the sum of fifty dollars; and it was the intention of both parties to said transaction to violate the laws against usury, and that said contract is in fact usurious, and said Bates is not and never was entitled to receive upon the contract more than the said sum of fifty dollars and the lawful interest thereon. The bill also states, that pursuant to said agreement complainant paid to said Bates on said contract the said sum of fifty dollars, and the lawful interest thereon. The bill further avers that Bates afterwards took possession of said horse, claiming him under said contract, is still in the possession of him, and has refused, on the demand of complainant, to surrender said horse to complainant. The bill further avers, that said transaction was in fact a loan by Bates to complainant of the sum of fifty dollars, and the additional seventy dollars, which complainant by said contract promised to pay Bates, was so much usury for the loan and forbearance of the fifty dollars; and both were so intended by complainant and Bates at the time of the transaction; and that said agreement was intended by both the parties thereto only as a security for the payment of the said one hundred

[Bates v. Crowell.]

and twenty dollars, and was put in its existing form for the purpose and with the intent to evade the statute against usury. The complainant submits himself to the jurisdiction of the court, and formally offers to do equity. The prayer of the bill is for the cancellation of the contract, and that the horse be delivered to complainant. The contract which is made a part of the bill as exhibit "A" is as follows: "Geo. B. Bates, of the first part and Allen Crowell of the second part agree as follows: Said Geo. B. Bates agrees to furnish said party of the second part one black horse (two white hind feet) named Pat, one single horse dray and one set of harness of the agreed value of one hundred and twenty dollars and ———— cents, upon the following conditions, which are to be strictly complied with by the party of the second part: 1. Said property so furnished to be used and kept at the residence of the party of the second part, and it is not to be removed therefrom without the written consent of the said George B. Bates. 2. The title to said property is to remain and continue in the said George B. Bates, until he makes said party of the second part a written title to the same; and until said title is made, said party of the second part holds possession of said property in trust for said George B. Bates. 3. Said party of the second part is to pay the sum of six dollars and ———— cents on Saturday of each week for twenty weeks, as rent for said property, to said George B. Bates at his place of business at ————. And if said party of the second part fails in any way to pay said rent when the same becomes due as aforesaid, then said George B. Bates or his assigns may take possession of said property by entering any premises of mine or to which I may have access and the said George B. Bates is to retain the amounts so paid for rent for and during the time said property has been in his possession. 4. If said party of the second part pays the sum agreed upon for each and every week as agreed above, then said George B. Bates obligates and binds himself to make said party of the second part a written title to said property. But said George B. Bates is not to make any title or lose or waive any right to said prop-

[Bates v. Crowell.]

erty unless said payments are made as above stipulated, time being here made the essence of this contract.

"And said party of the second part hereby acknowledges the receipt of said property above described and agrees to hold the same upon the terms above stated. Said party of the second part further agrees and binds himself to keep said property in good order and repair and not to abuse same and to comply with each and every one of the stipulations above named, or in default thereof to deliver said property upon demand without any trouble, expense or delay being given to said George B. Bates or his assigns. Any violation of this agreement shall be considered as a conversion of said property. Said party of the second part further agrees that he will not attempt to mortgage, incumber or in any way convey said property until he gets a title to the same, as he does not own the same until that time. And the said party of the second part further agrees to pay all attorney's fees or expenses of collection in default of payment of any of the above amounts; and, to secure the payments above promised to be paid as rent, the said party of the second part hereby waives all his right to claim any exemption under the constitution and laws of the State of Alabama or any other State in the United States.

The respondents moved to dismiss the bill for the want of equity, and also demurred to it upon the ground that the averments did not state a ground for equitable relief. This demurrer was overruled. Thereupon the defendant filed his answer to the bill, in which he set up that the horse was purchased by him from the Heidt-Nelson Coal & Lumber Company, for the sum of fifty dollars, and that he sold the horse to the complainant as evidence by the contract made an exhibit to the bill and copied above. That this transaction with the complainant was an absolute sale and was not intended as a mortgage, and that he refused to lend the complainant the money necessary to purchase the horse; but that after having purchased it himself, he entered into a separate transaction for the absolute sale to complainant as evidenced by said contract. There was also included in

this answer a special plea, the substance of which is stated in the opinion.

The complainant interposed a demurrer to this plea, upon the ground that the facts set forth therein constituted no answer to the complainant's bill. No objection was made to this mode of contesting the sufficiency of the plea; and the demurrer was sustained.

The cause was submitted in behalf of the complainant upon the bill and exhibits thereof, and the depositions of A. C. Howze one of the attorneys for complainant, C. C. Heidt and A. W. Nelson of Heidt-Nelson Coal & Lumber Company, together with the exhibits thereto, all of which testimony substantiated the averments of the bill.

In behalf of the defendant, the cause was submitted upon the answer and the depositions of the defendant and one Grimsley, and the exhibits thereto, and the testimony of these two witnesses tended to show that the transaction between the defendant and the complainant was an absolute sale.

On the final submission of the cause, a decree was rendered granting the complainant the relief prayed for. From this decree the defendant appeals, and assigns the rendition thereof as error.

JOHN H. MILLER, for appellant.—The bill in this case does not contain equity. A detinue suit would settle every controversy and issue raised by this bill. If the instrument evidencing the contract between the parties was a *mortgage* or *security for a debt,* then it was open in law to every defence under our statutes and decisions that could be made in a court of equity. Section 2720 (Code of 1886) as amended in Acts of 1892-3, p. 1127, says "the mortgagor may show accord and satisfaction payment, or *otherwise*" as to a note or other obligation sued on. This section as thus amended was construed in the following cases: *Lewis v. Simon & Co.,* 101 Ala. 546; *Foster & Rudder v. Smith,* 104 Ala. 248; *Powell v. Crawford,* 110 Ala. 294. It would have been permissible in an action of detinue to receive evidence as to the facts and circumstances surrounding the transaction in order to determine whether there was a sale or a mortgage in-

tended by the parties.—3 Amer. & Eng. Encyc. of Law, 177; *Fuller v. Parrish*, 3 Mich. 211; *Despard v. Waldbridge*, 15 N. Y. 374.

If then the contract could be declared a mortgage in a court of law, and the defences which were open to a suit on a note or other obligation were available, then the remedy at law was full, adequate and complete, and the motion to dismiss and the demurrers should have been sustained. The demurrers were based on the ground of contradictory averments, and that the nature and character of the usurious agreement were not sufficiently set forth. Both of these grounds were well taken.—*Woodall v. Kelly & Co.*, 85 Ala. 368; *Munter v. Linn*, 61 Ala. 492; *Masterson v. Grubbs*, 70 Ala. 407; *Kelly v. Mobile B. & L. Asso.*, 64 Ala. 501; *Burns v. Campbell*, 71 Ala. 284.

The court erred in sustaining the demurrer to the 6th plea of defendant. That plea set up substantially that the parties to this bill had had their rights adjusted in the circuit court by a detinue suit, appealed there from the justice court of Charles J. Martin, and that the issue was found in the circuit court in favor of this appellant, and that the matter was now *res adjudicata*. If the same issues are triable in law as in equity, and there is concurrent jurisdiction, and a court of law assumes jurisdiction first, the matter will not be re-opened.—1 Herman on Estoppel, 465; *Moore v. Lesueur*, 33 Ala. 237; *Allman v. Owen*, 31 Ala. 167; *Hickey v. Hickey*, 53 Ala. 515; *Duckworth v. Duckworth*, 35 Ala. 70; *Forsyth v. Hammond*, 166 U. S. 506.

WHITE & HOWZE, *contra.*—There can be no doubt that the contract is usurious; the transaction originated in an application for a loan of money. The proposition to buy the horse for $50 and sell him to Crowell for $120 was made in response to this application and the price which complainant was to pay was more than the value of the horse, which was known to both parties.—37 Amer. & Eng. Encyc. of Law, 1021, note p. 1025; *Miller v. Bates*, 35 Ala. 580; *Barr v. Collier*, 54 Ala. 39.

[Bates v. Crowell.]

This was a conditional sale and not a mortgage. *Warren v. Liddell,* 110 Ala. 232; *Montgomery v. Smith,* 98 Ala. 644; *Sumner v. Woods,* 67 Ala. 139; *Turner v. Wilkinson,* 72 Ala. 361; *Harkness v. Russell,* 118 U. S. 663.

This being the case, it was not allowable in a court of law to vary the terms of the instrument by showing that it was a mortgage.—*Bragg v. Massie,* 38 Ala. 8; *Jones v. Trawick,* 31 Ala. 253; 1 Brick. Dig., 865, § 866.

The plea of former adjudication is bad. The suit was an action in detinue and appellee could not in defense of that action avail himself of the usury in the contract. Therefore, that court had no jurisddiction of the question, and the proper and only remedy was to resort to a court of chancery.—*Bradford v. Daniell,* 65 Ala. 133; *Morris v. Harvey,* 4 Ala. 300; *Kelly v. Young,* 27 Ala. 204.

DOWDELL, J.—A motion to dismiss the bill for want of equity, as also a demurrer going to the equity of the bill, was overruled by the court below. The defendant then answered the bill, and also filed a plea thereto, setting up in said plea, as *res adjudicata* of the matters complained of in complainant's bill, a judgment in a detinue action in the circuit court, wherein the defendant had recovered of the complainant the horse in question under the contract, exhibit "A." A demurrer was sustained by the court to this plea, no objection being made as to this mode of testing the sufficiency of the plea. The plea failed to show that complainant here, who was defendant in the detinue suit, had or could have had the benefit of the matters set up in his bill, as a defense in said suit, and for that reason the plea was insufficient, if for no other. It is plain from the averments of the plea that the defendant here, and plaintiff in the detinue action, recovered judgment for the horse in that action on the strength of his title under the contract, which is here set out as exhibit "A" in complainant's bill. This contract, as apparent on its face, was a conditional sale, and standing alone was bound to be so held and construed in a court of law.—*Warren v. Lid-*

*dell,* 110 Ala. 232; *Montgomery Iron Works v. Smith,* 98 Ala. 644; *Sumner v. Woods,* 67 Ala. 139; *Turner v. Wilkinson,* 72 Ala. 361. Nor was it competent in a court of law to show by parol evidence, that it was intended by the parties to be a mortgage. It is not permissible in a court of law to vary the terms of, a written contract by parol evidence.—1 Brick. Dig. 865, § 866; *Bragg v. Massie,* 38 Ala. 89; *Jones v. Trawick's Admr.,* 31 Ala. 253. It is only by reason of the statute that the defense of usury can be set up in an action of detinue under a mortgage. The provisions of the statute do not extend to cases where the action in detinue is based upon a title under a conditional sale. If the contract, which on its face was a conditional sale, was in fact, as averred in complainant's bill, a mortgage or security for a loan, and the transaction was usurious, the complainant's only means of relief against the usury was by bill in equity to redeem, offering to pay principal and legal interest; or, if as in the present case, the loan and legal interest thereon, had been paid to the creditor, then by bill for cancellation of the contract and recovery of the mortgaged property. The jurisdiction of chancery for the cancellation of contracts is an old and well established doctrine.—3 Pomeroy's Equity, (2d ed.), § 1377, and authorities cited in note.

The defendant in his answer admits that he sold the horse to the complainant at and for the price of one hundred and twenty dollars, to be paid in weekly installments of $6 a week. The contract, exhibit A, embraces a wagon and set of harness; the only reference in the testimony to this property, is to it as being the property of the complainant Crowell, and this circumstance tends to show that the contract was something more than a conditional sale of the horse. The testimony of the witnesses for the complainant is to the effect that the transaction was a loan, and when taken in connection with the circumstances attending the transaction, the weight of the evidence sustains the decree of the city court on the facts.

We find no error in the record, and the decree of the court below must be affirmed.